IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK MORI,<br>on behalf of plaintiff and the class members<br>described below,<br><br>      Plaintiff,<br>   vs.<br><br>EAST SIDE LENDERS, LLC; MICHAEL<br>LUXENBERG; and DOES 1-5;<br><br>      Defendants. | Case Number 1:11-CV-01324<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Sidney I. Schenkier |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erik Mori ("Plaintiff") filed this putative class action complaint against

Defendants East Side Lenders, LLC ("ESL"), Michael Luxenberg ("Luxenberg"), and DOES 1-5

asserting violations of various Illinois statutes, the Racketeer Influenced and Corrupt

Organizations Act, and the Electronic Funds Transfer Act.  Plaintiff seeks redress stemming

from loans ESL made over the Internet to Plaintiff and to others similarly situated.  ESL and

Luxenberg (collectively "Defendants") now move the Court to compel arbitration and stay the

proceedings based upon the parties' agreement to arbitrate any and all disputes between them.

For the reasons that follow, the Court grants the Defendants' motion.

**BACKGROUND**

The relevant factual background is drawn from the pleadings and the parties' filings in

connection with the instant motion to compel arbitration.  Plaintiff is an Illinois resident who

applied for a loan with ESL on or about December 28, 2010.  (Dkt. No. 1 ¶¶ 4, 13.)  ESL is a

Delaware limited liability company engaged in the business of making high interest "pay day"

loans to consumers over the Internet. (*Id.* at ¶¶ 5-7.) Luxenberg is ESL's sole manager. (*Id.* at ¶ 11.). On its website, ESL states in relevant part that:

> East Side Lenders strives to set the standard for the online pay day loan business. We are dedicated to providing premier alternative financing – helping people receive a quick a [sic] pay day loan.

(*Id*. at ¶ 7). ESL required Plaintiff to repay his loan through electronic fund transfers from his bank account. (*Id.* at ¶ 27.) On more than one occasion, Plaintiff renewed his loan. (*Id.* at ¶ 14.) With each renewal, Plaintiff's bank account was debited $30 in interest for each $100 he borrowed. (*Id.* at ¶ 15.)

On February 24, 2011, Plaintiff filed this four count complaint alleging that ESL violated: (1) the Illinois Interest Act, 815 ILCS 205/1 *et seq*.; (2) the Illinois Payday Loan Reform Act, 815 ILCS 122/1 *et seq*. and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*.; (3) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.; and (4) the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*.

Defendants seek an order of the Court that compels Plaintiff to submit this dispute to arbitration and stays the proceedings pending an arbitral decision.[1] Defendants argue that all of the claims that Plaintiff has asserted are premised solely upon the single loan transaction between Plaintiff and ESL. (Dkt. No. 19 p. 1.) Defendants contend that the loan transaction is governed by a Loan Agreement and Promissory Note executed by the parties on or about December 27, 2010 that is attached to the motion as an exhibit. (Dkt. No. 19, Ex. A.) This agreement contains a "Waiver of Jury Trial and Arbitration Provision," an "Agreement to Arbitrate All Disputes," and an "Agreement No To Bring, Join Or Participate In Class Actions." (*Id.* at p. 2.) Defendants claim that these provisions require Plaintiff to submit this dispute to

---

[1] ESL filed its motion to compel arbitration on March 29, 2011. (Dkt. No. 18.) On June 20, 2011, the Court granted Luxenberg's motion to adopt and join in the instant motion. (Dkt. Nos. 46, 49.)

arbitration. (Dkt. No. 19. p. 2.) Plaintiff challenges the agreement offered by Defendants

claiming that the agreement is unauthenticated and that it fails because the arbitrator designated

under the agreement no longer accepts consumer arbitrations. (Dkt. No. 29 pp. 1-4.)

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") mandates enforcement of valid, written arbitration

agreements. *Tinder v. Pinkerton Sec*., 305 F.3d 728, 733 (7th Cir. 2002); 9 U.S.C. § 2. (West

2011). To give effect to the federal policy favoring private arbitration, the FAA provides for

stays of litigation when an issue presented in the case is referable to arbitration. *Tinder*, 305

F.3d at 733; 9 U.S.C. § 3. The question of whether the parties have agreed to arbitrate the

dispute is a question answered by the district court rather than the arbitrator. *Cont'l Cas. Co. v.*

*Am. Nat'l Ins. Co*., 417 F.3d 727, 730 (7th Cir. 2005). Whether a binding arbitration agreement

exists is determined by state law principles of contract formation. *Tinder*, 305 F.3d at 733.

Nonetheless, "[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d

801, 808 (7th Cir. 2011). If the district court determines that the agreement to arbitrate is valid,

the court has no further power or discretion to address the issues raised in the complaint and

must stay the proceedings and order arbitration. *Volkswagen of Am., v. Sud's of Peoria, Inc*.,

474 F.3d 966, 971 (7th Cir. 2007).

To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute

within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed

to arbitration. *Zurich Am. Ins. Co. v. Watts Indus.,* 466 F.3d 577, 580 (7th Cir. 2006). The party

opposing arbitration must identify a triable issue of fact concerning the existence of the

agreement in order to obtain a trial on the merits of the contract. *Tinder*, 305 F.3d at 735.

Although the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet, courts in the Seventh Circuit have required the opposing party meet the same standard required of a party opposing summary judgment and demonstrate that a genuine issue of material fact warranting trial exists. *Id*. A party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration exists; the party must identify specific evidence in the record demonstrating a material factual dispute for trial. *Id.*

## DISCUSSION

### A. Existence of a Contract and Arbitration Agreement

The initial inquiry before the Court is whether the parties formed a valid and enforceable agreement to arbitrate. Plaintiff alleges that he obtained a $750 loan over the Internet from ESL on or about December 28, 2010, that he renewed the loan from time to time, and that his bank account was debited each time the loan was renewed. (Dkt. No. 1 ¶¶ 13-15.) Plaintiff attached email correspondence as an exhibit to the complaint in support of his allegation that the loan was continued over time. (Dkt. No. 1-1 pp. 16-17.) Plaintiff alleges in his complaint that ESL required repayment of the loan by electronic fund transfer. (Dkt. No. 1 ¶ 27.) In count II of the complaint, Plaintiff alleges that "East Side Lenders, LLC contracted for and collected finance charges" from Plaintiff and others similarly situated in violation of the Illinois Payday Loan Reform Act ("PLRA"). (*Id.* at ¶ 49.) Plaintiff did not provide the Court with any agreement between the parties in connection with the $750 loan as an exhibit to either his complaint or his brief in opposition to the instant motion.

The only written agreement in connection with the $750 loan before the Court is a Loan Agreement and Promissory Note ("Loan Agreement") produced by Defendants. This Loan

Agreement bears Plaintiff's electronic signature and indicates that ESL agreed to loan Plaintiff

$750 on December 27, 2010 and that the loan was due on January 18, 2011. (Dkt. No. 19, Ex.

A.) The Loan Agreement includes Plaintiff's banking information, which Defendants redacted

to protect Plaintiff's privacy. (Dkt. No. 30 ¶ 3.) The Loan Agreement provides that Plaintiff

authorizes ESL "to initiate an ACH debit entry to [Plaintiff's] deposit account indicated below

for the total amount due and owing under this Loan Agreement on the Payment Date." (Dkt. No.

19, Ex. A.) Above Plaintiff's name is a provision stating that "[b]y electronically signing this

Agreement, You acknowledge that You have read, understood, and agree to all of the terms and

conditions of this Agreement." (*Id.*)

The Loan Agreement also contains an arbitration provision that states, with all emphasis

as set forth in the agreement, as follows:

> This Arbitration Provision is made pursuant to a transaction involving
> interstate commerce and shall be governed by the Federal Arbitration Act (the
> "FAA"). If a final non-appealable judgment of a court having jurisdiction over
> this transaction finds, for any reason, that the FAA does not apply to this
> transaction, then Our agreement to arbitrate shall be governed by the
> arbitration law of the State of Delaware…If any of this Arbitration Provision is
> held invalid, the remainder shall remain in effect….You and We agree that any
> and all claims between You and Us, or any claims arising from or relating to
> this Loan, or any other loan You previously or may later obtain from Us,
> regarding collection of the Loan, or alleging fraud or misrepresentation, shall
> be resolved by binding arbitration. Such arbitration shall be conducted under
> the rules and procedures of the National Arbitration Forum ("NAF") in effect
> at the time the claim is filed as appropriate. This agreement to arbitrate shall
> apply no matter by whom or against whom any claim is filed…**YOU AND**
> **WE WOULD HAVE HAD AN OPPORTUNITY TO LITIGATE**
> **DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY**
> **DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO**
> **RESOLVE DISPUTES THROUGH BINDING ARBITRATION. YOU**
> **ACKNOWLEDGE AND AGREE THAT BY ENTERING INTO THIS**
> **AGREEMENT TO ARBITRATE DISPUTES YOU ARE GIVING UP**
> **YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE OR TO**
> **HAVE A COURT RESOLVE ANY AND ALL CLAIMS, DISPUTES OR**
> **CONTROVERSIES ALLEGED AGAINST US OR RELATED THIRD**
> **PARTIES.**

(*Id.*) The agreement also includes a provision allowing Plaintiff to opt-out of the arbitration agreement within a week after submitting his loan application.

Plaintiff challenges the Loan Agreement arguing that ESL failed to show evidence that there was a "meeting of the minds" between the parties and further failed to show that the relevant terms of the Internet contract were displayed so that Plaintiff could have viewed them and agreed to them. These arguments lack merit. Indeed, the complaint allegations alone establish a "meeting of the minds" relative to a $750 loan ESL made to Plaintiff over the Internet. (Dkt. No. 1 ¶ 13.) Plaintiff's allegations also establish that "East Side Lenders, LLC contracted for and collected finance charges, interest, and fees" from him and others similarly situated. (*Id.* at ¶ 49.) The terms of the Loan Agreement were displayed clearly enough to Plaintiff such that he was able to fill in his name, address, amount of loan, bank name, bank address, bank routing number, bank account number, and provide his electronic signature at the end of the document. The Loan Agreement is entirely consistent with Plaintiff's allegations concerning when the loan was made, the amount of the loan, and how the loan was to be repaid. Furthermore, Defendants offered the affidavit of Christy Finazzo ("Finazzo"), an ESL Manager, who affirms that the Loan Agreement provided by ESL is a true and correct copy of the agreement that was electronically signed by Plaintiff on December 27, 2010. Plaintiff has failed to produce sufficient evidence to raise a material issue of fact concerning the existence of a valid agreement between the parties. Plaintiff's allegations together with the Loan Agreement and Finazzo's affidavit provide compelling support that the Loan Agreement governs the $750 loan that ESL made to Plaintiff in December 2010 and any continuances thereafter.

The Court finds that the parties agreed to the terms and conditions set forth in the Loan Agreement. These terms include the agreement to submit "any and all" disputes between the

parties to arbitration.  This language is broad enough to cover Plaintiff's state law, RICO, and

EFTA claims.  By filing the instant lawsuit and opposing the motion to compel arbitration,

Plaintiff has demonstrated his refusal to proceed with arbitration.  Thus, Defendants have met

their burden to compel arbitration and stay the proceedings.

###    B.  Unavailability of the National Arbitration Forum and Choice of Law

The conclusion that Defendants have met their burden to compel arbitration does not end

the Court's review as the designated arbitrator, the National Arbitration Forum ("NAF"), no

longer accepts consumer disputes.  Section 5 of the FAA provides a mechanism for the

appointment of an arbitrator in the event that the designated arbitrator fails as follows:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.  The laws of Illinois and Delaware take markedly different approaches toward

applying Section 5 to address the unavailability of a designated arbitral forum.  Illinois courts

have held that Section 5 of the FAA may be applied to name a substitute arbitrator when the

parties' designated arbitral forum fails unless the arbitral designation is integral to the parties'

agreement to arbitrate.  *Carr v. Gateway, Inc.*, 241 Ill.2d 15, 27 (Ill. 2011).  Where the

designation is integral to the agreement, Illinois courts hold that Section 5 of the FAA does not

permit the appointment of a substitute arbitrator and thus the agreement to arbitrate must fail.  *Id.*

at 33.  In contrast, Delaware courts are empowered to appoint an arbitrator when the agreed

method of arbitration fails for any reason. *Fireman's Insur. Co. v. Birch Pointe Condo. Ass'n*, 2008 Del. Super. Lexis 451, (2008); DEL. CODE ANN. 10 § 5704 (West 2011).

Defendants argue that Delaware law applies to allow this Court to appoint an arbitrator while Plaintiff argues that Illinois law applies to terminate the arbitration agreement because the designation of NAF is integral to the parties' alleged agreement. Defendants point to certain provisions in the Loan Agreement to support their claim that Delaware law applies:

> **Place Of Contract:** This Agreement is made after Our acceptance of its terms at Our offices in Delaware upon Our funding of Your Loan from Our Delaware bank accounts(s).

> **Governing Law, Assignment And Execution:** This Loan Agreement is governed by the laws of the State of Delaware, as it is the State in which Your loan application is received, the Loan Agreement in entered into, the Loan is approved and funded and where payment is received by Us in fulfillment of Your obligations under the Loan Agreement.

(Dkt. No. 19, Ex. A.) It is only under exceptional circumstances that a district court will not honor a reasonable choice-of-law provision. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (2009). Plaintiff has not shown that any exceptional circumstances exist here. The Court has already determined that a valid contract exists between the parties and therefore rejects Plaintiff's argument that Delaware law cannot apply because no agreement was formed.

Plaintiff also argues that the arbitration provision is invalid because NAF was no longer in the consumer arbitration business when the "purported" Loan Agreement was formed in December 2010. This argument also lacks merit because the arbitration provision contains a clause stating that: "[i]f any of this Arbitration Provision is held invalid, the remainder shall remain in effect." Thus, even if the Court were to determine that the designation of NAF in December 2010 was invalid, the Court may strike this portion of the arbitration agreement and still require the parties to submit their dispute to arbitration.

Plaintiff further argues that the application of Delaware law here would be contrary to Illinois's fundamental public policy. Plaintiff relies upon non-binding case law to support his argument that the Court should not honor the choice of law provision here in order to protect Plaintiff and others who find themselves in an inferior bargaining position. (Dkt. No. 29 p. 6.) Not only is the Court not bound by the case that Plaintiff has cited, but a review of the facts shows the case to be clearly distinguishable from the matter at hand. In *Electrical & Magneto Serv. Co., Inc. v. AMBAC Int'l Corp.*, 942 F.2d 660, 661-62 (8th Cir. 1991), a franchisor terminated its franchise agreement 10 days after providing the Missouri based franchisee with written notice. Despite the fact that the agreement provided for termination under such circumstances, the franchisee sued for breach of contract claiming Missouri law required a franchisor to provide 90 days' notice before termination. *Id.* at 661. The district court applied the South Carolina law as provided for in the choice-of-law provision and granted summary judgment in the franchisor's favor. *Id.* The Eighth Circuit reversed, holding that the Missouri statute requiring 90 days' notice was a declaration of Missouri state policy that could not be ignored by waiver or contract. *Id.* at 664Plaintiff's reliance upon *AMBAC* is misplaced. *AMBAC* was a breach of contract action that did not address an arbitration agreement or the failure of a designated arbitrator. Further, unlike the plaintiff in *AMBAC*, Plaintiff here has not identified any Illinois statute that conflicts with any of the specific terms and conditions in the Loan Agreement.

The Court finds that the choice-of-law provision in the Loan Agreement is reasonable given that Delaware is the place of contracting, the state in which ESL is incorporated, and the state where Plaintiff's loan was made and continues to be managed. Pursuant to Delaware law

and Section 5 of the FAA, this Court appoints JAMS Arbitration, Mediation, and ADR Services to hear the parties' dispute given NAF's unavailability to conduct the proceedings.

### C.  Waiver of Class Action

Defendants also argue that Plaintiff must arbitrate his claim individually and not as a class action.  (Dkt. No. 19 p. 10.)  Defendants claim that Plaintiff waived his right to maintain a class action through the "Agreement Not to Bring, Join or Participate in Class Actions" provision found in the Loan Agreement.  (*Id.* at pp. 10-12.)  Having determined that this dispute must be submitted to arbitration, any matters concerning how the parties are to proceed are for the arbitrator to decide.  *See, e.g., Employers Insur. Co. v. Century Indemnity Co.*, 443 F.3d 573, 581 (7th Cir. 2006).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration and stay the proceedings.  The Court orders the parties to submit their dispute to JAMS Arbitration, Mediation, and ADR Services.  This matter is stayed pending the proceedings before JAMS.


IT IS SO ORDERED.


Date:  June 24, 2011

Honorable Sharon Johnson Coleman